02-11-499-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00499-CV

 

 


 
 
 In
 the Interest of M.A.-O.R., the Child
 
 
 §
  
 §
  
 §
  
 §
  
 
 
 From the 211th District
 Court
  
 of
 Denton County (2011-30228-211)
  
 February
 14, 2013
  
 Opinion
 by Chief Justice Livingston
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed.

 

SECOND DISTRICT COURT OF APPEALS 

 

 

 

By_________________________________

   
Chief Justice Terrie Livingston

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00499-CV

 

 


 
 
 In the Interest of M.A.-O.R., the Child
 
 
  
 
 
  
 
 


 

----------

FROM THE 211th
District Court OF Denton COUNTY

----------

MEMORANDUM
OPINION[1]

----------

          In
three issues, appellant M.L.R. (Mother) appeals the trial court’s termination
of her parental rights to her daughter, M.A.-O.R. (Mary).[2] 
Mother contends that the trial court failed to adequately admonish her about
the importance of completing her service plan, that the evidence was insufficient
to support the removal of Mary from her care, and that the trial court erred by
denying her oral motion for a continuance of the termination trial.  We affirm.

Background
Facts

          In
late 2007, Mother gave birth to Mary, who has Down’s syndrome, while Mother was
living in Ohio.  Mary requires speech therapy and physical therapy, and Mother
testified at trial that Mary has received such therapy since her birth.  Mother
also has a son, Trent, who was approximately sixteen years old at the time of Mary’s
birth.

          From
late August 2008 (when Mary was less than a year old) until early November
2008, Mother was confined on a charge of passing a bad check.  According to
Trent, after Mother’s arrest, he and Mary began living with their aunt and
uncle.  Mother received three years’ probation for her theft charge in Ohio
before moving to Oklahoma in May 2009 with Mary.  Trent stayed in Ohio.  In
October 2009, an Ohio court found that mother had failed to comply with her
probation because she had absconded from the state.

          After
Mother arrived in Oklahoma, she committed the offenses of identity theft, embezzlement
of rented property, and passing bad checks.[3]  Upon Mother’s September
2009 arrest in Oklahoma, Mary stayed with Mother’s father and stepmother.  They
sought guardianship of Mary, but Mother eventually regained custody of her, and
Mother and Mary moved to Texas in the fall of 2010.  Trent also moved to Texas
and stayed with Mother and Mary in a rental house in Providence Village.  At
one point in the latter part of 2010, Mother let Trent and Trent’s girlfriend take
Mary to Ohio for over a month.

          On
April 11, 2011, the police went to Mother’s home because of an argument she had
with Trent.[4]  When the police
discovered that Mother had a pending arrest warrant in Oklahoma (which Mother
already knew about), they arrested her.  Trent told a Child Protective Services
(CPS) investigator that he had concerns about Mother’s ability to meet Mary’s
needs, and he also said that he would not be able to care for Mary.  Because
Mother had been incarcerated and because CPS could not find an appropriate
caregiver for Mary, it removed her from Mother’s custody.  Mary initially lived
in foster care, but she later began living with Mother’s father and stepmother
again in Oklahoma, and she stayed with them until the termination trial.[5]

          The
day after Mary’s removal, the Department of Family and Protective Services (the
Department) filed a petition asking the trial court to name the Department as
Mary’s temporary managing conservator and to terminate Mother’s parental rights
to Mary if reunification could not be achieved.  The petition also included a
request from the Department for the trial court to inform Mother “that parental
and custodial rights and duties may be subject to restriction or to termination
unless [she was] willing and able to provide [Mary] with a safe environment.”  Upon
filing the petition, the Department also filed affidavits from two of the
Department’s employees about the reasons for Mary’s removal.  The trial court
appointed the Department as Mary’s temporary sole managing conservator and set an
adversary hearing.[6]

          On
the date of the adversary hearing, Mother was still in custody in Texas for the
warrant out of Oklahoma.  Mother told the trial court that she had reviewed
services that had been proposed for her and that she thought they were fair,
and she also signed a document recognizing that she had been ordered to comply
with any original or amended service plan.  The trial court then told Mother,

[The Department wants] to give your child back to you
and, you know, get things straightened out and get out of your hair as fast as
they can.  They’ve got other people also.  But a lot of that depends on you
complying with the plan.  If you don’t, twelve strangers are probably going to
be over here in the [jury box] deciding whether you ever get to see your kid
again or not.

          In
May 2011, the Department filed a family service plan.  The plan required Mother
to perform several acts, including completing parenting classes and attending
counseling sessions.

          Authorities
eventually sent Mother to Oklahoma, and she was released from confinement there
in July 2011.  She returned to Texas soon thereafter.  Upon Mother’s release,
two CPS employees spoke to her, on different dates, about the services she
needed to complete.  Also, a CPS employee encouraged Mother to obtain counsel. 
When Mother returned to Texas, she did not live near where Mary was residing.  Also,
according to Mother’s testimony at trial, she could not take a bus to come see
Mary because her driver’s license had expired, and she could not ride a bus without
valid identification.

          Mother
did not work on her service plan.  At an August 2011 permanency hearing, the
trial court received evidence that Mother had not been visiting Mary and had
not been working on the plan although the trial court found that Mother had
“been given a copy of the temporary orders with the necessary information to
complete her services.”

          The
trial court conducted a bench trial on the Department’s termination petition in
November 2011.[7]  Mother had an
outstanding arrest warrant on the day the trial began.  From the time of Mary’s
removal in April 2011 until the trial, Mother had seen Mary only twice, with
both visits occurring in September 2011.  At the beginning of the trial, Mother,
who was appearing pro se, orally asked for a continuance.  The trial court
questioned Mother about how much of the service plan she had completed, and
when Mother indicated that she had not progressed on the service plan, the
trial court denied the motion for continuance “based on form and substance.”

          After
denying the motion for continuance and hearing testimony from seven witnesses
about Mother’s criminal conduct, her acts toward Mary, her failure to work on
services, and other matters, the trial court terminated Mother’s parental
rights to Mary, finding that termination was in Mary’s best interest, that
Mother had knowingly placed or had knowingly allowed Mary to remain in
conditions or surroundings that endangered Mary’s physical or emotional
well-being, that Mother had engaged in conduct or had knowingly placed Mary
with persons who engaged in conduct that endangered Mary’s physical or
emotional well-being, and that Mother had constructively abandoned Mary.[8] 
Mother brought this appeal.

The Trial
Court’s Admonitions Regarding the Service Plan

          In
her first issue, Mother contends that the trial court committed “fundamental
error” and violated her right of due process by failing to fully admonish her
about the importance of completing the service plan.  To support this argument,
Mother relies on two sections of the family code, including section 263.006,
without citing any appellate decisions that have discussed or applied those
sections.  See Tex. Fam. Code Ann. § 263.006 (West 2008) (stating that
at status and permanency hearings, the trial court must “inform each parent in
open court that parental and custodial rights and duties may be subject to
restriction or to termination unless the parent or parents are willing and able
to provide the child with a safe environment”).[9]  

          Mother
acknowledges that during the adversary hearing soon after Mary’s removal from
her custody, the trial court asked her whether she had reviewed the service
plan and whether she believed that any of the plan’s requirements were unfair. 
She asserts, however, that the “trial court did not follow that line of
questioning with any admonishments . . . that would impress on [her] that
failure to progress [on the plan] . . . may have a negative impact on her ability
to reunite with her child.”

          Assuming
that Mother’s argument is properly before us, we disagree with its factual
premise.[10]  As explained above, the
trial court informed Mother verbally at the adversary hearing that her reunification
with Mary depended on “complying with the plan” and that if Mother did not
comply with it, a factfinder would determine whether she would “ever get to see
[Mary] again or not.”  Moreover, Mother signed the trial court’s temporary
order following the adversary hearing.  That order, just as the later-filed
service plan, required Mother to attend weekly counseling; submit to random
drug testing; maintain safe, stable, and appropriate housing; and maintain
suitable employment.  The order notified Mother that these actions were “necessary
to obtain the return of the child, and failure to fully comply with [the
actions could] result in the restriction or termination of parental rights.” 
Thus, we conclude that Mother received adequate notice about the importance of
progressing on and completing her service plan.

          Next,
we agree with the Department that Mother has not established a violation of the
provisions of the family code that she has cited.[11] 
While those provisions required the trial court, at status and permanency
hearings, to advise Mother that the trial court would review progress on her service
plan and that Mother’s parental rights could be restricted or terminated if she
did not provide Mary with a safe environment, the record does not establish
that Mother attended any status or permanency hearings.  And as explained
above, at the one hearing other than the termination trial that Mother did
attend, she was advised verbally and in writing about the relationship between
completing services and obtaining Mary’s return.

          For
these reasons, we reject Mother’s arguments that she did not receive adequate admonitions
about the importance of completing her service plan and that the trial court
denied her due process.  We overrule her first issue.

The
Adequacy of the Basis for Mary’s Removal

          In
her second issue, Mother contends that the evidence was legally and factually
insufficient to support the initial removal of Mary from her care and that
“[a]bsent the initial removal, . . . there would have been no service plan to
complete and no final hearing.”[12]  Mother does not contend
that the evidence at the termination trial was insufficient to support
termination on the grounds expressed in the trial court’s judgment.

          If
there is “no time to obtain a temporary restraining order or attachment before
taking possession of a child consistent with the health and safety of that
child, an authorized representative of the Department . . . may take possession
of a child without a court order” under the conditions specified in section
262.104 of the family code.  See Tex. Fam. Code Ann. § 262.104(a) (West 2008). 
On or before the first working day after the Department takes possession of a
child without a court order, the trial court must review the propriety of the
removal and issue an order.  See id. §§ 262.106(a), .107(a) (West 2008). 
At the full adversary hearing within fourteen days after the removal of a child
from a parent’s custody, the Department, to maintain custody of the child, must
prove that

          (1) there was a danger to the physical health
or safety of the child which was caused by an act or failure to act of the
person entitled to possession and for the child to remain in the home is
contrary to the welfare of the child;

          (2) the urgent need for protection required the
immediate removal of the child and reasonable efforts, consistent with the
circumstances and providing for the safety of the child, were made to eliminate
or prevent the child’s removal; and

          (3) reasonable efforts have been made to enable
the child to return home, but there is a substantial risk of a continuing
danger if the child is returned home.

Id. §
262.201(b); see In re Tex. Dep’t of Family & Protective Servs., 255
S.W.3d 613, 614 (Tex. 2008) (orig. proceeding).  A trial court’s decision to
allow the Department to maintain custody of a child following an adversary
hearing is reviewable through a petition for a writ of mandamus.  See Tex.
Dep’t of Family & Protective Servs., 255 S.W.3d at 614; In re Allen,
359 S.W.3d 284, 288 (Tex. App.—Texarkana 2012, orig. proceeding) (op. on reh’g);
see also In re E.D.L., 105 S.W.3d 679, 688 (Tex. App.—Fort Worth 2003,
pet. denied) (explaining that the purpose of the adversary hearing is “to afford
parents the opportunity to challenge [the Department’s] right to retain any
children whom [the Department] has taken into custody under an ex parte order
from the court”).

          Mother
did not challenge Mary’s removal from her custody during the adversary hearing
in this case, nor did she seek mandamus relief after the adversary hearing when
the trial court entered its temporary order, which she approved as to both form
and content.  The temporary order recited that an “urgent need for protection
required the immediate removal of the child.”

          Because
Mother did not, at any point in the trial court, challenge Mary’s initial
removal from her care; because she appeared to agree, by signing the temporary
order following the adversary hearing, that there was an “urgent need” for the
removal; and because the trial court’s unchallenged findings supporting
termination are not predicated on the propriety of the removal, we overrule
Mother’s challenge in her second issue to the evidentiary justification for the
removal.  See Tex. R. App. P. 33.1(a), 44.1(a); In re E.P.C., 381
S.W.3d 670, 684 n.3 (Tex. App.—Fort Worth 2012, no pet.) (en banc); Melton
v. Tex. Dep’t of Family & Protective Servs., No. 03-08-00168-CV, 2010
WL 668917, at *10 (Tex. App.—Austin Feb. 25, 2010, no pet.) (mem. op.) (holding
in a termination appeal that a father did not preserve his issue related to the
Department’s initial temporary custody of his daughter because the father did
not challenge that custody in the trial court).

The
Denial of Mother’s Oral Motion for Continuance

          Finally,
in her third issue, Mother contends that the trial court abused its discretion
by denying her oral motion for a continuance of the termination trial. Mother
notes that because Mary’s removal occurred in April 2011 and the trial occurred
in November 2011, a continuance would not have impacted the trial court’s general
duty to resolve the case within a year after Mary’s removal.[13] 
Mother also contends that the “speedy trial in this instance . . . foreclosed
any meaningful opportunity for [her] to complete the prescribed service plan.”

          We
review a trial court’s ruling on a motion for continuance for an abuse of
discretion. See BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 800
(Tex. 2002); In re Z.C., 280 S.W.3d 470, 478 (Tex. App.—Fort Worth 2009,
pet. denied).  Thus, we must determine whether the trial court’s action in
denying the continuance was so arbitrary and unreasonable as to amount to a
clear and prejudicial error of law.  See Z.C., 280 S.W.3d at 478.  “The focus
is on whether the trial court acted without reference to guiding rules or
principles.”  Id.

          No
continuance may be granted “except for sufficient cause supported by affidavit,
or by consent of the parties, or by operation of law.”  Tex. R. Civ. P. 251.  Thus,
generally, when the movant fails to provide an affidavit in support of a motion
for continuance, we presume that the trial court did not abuse its discretion
in denying the motion.  Villegas v. Carter, 711 S.W.2d 624, 626 (Tex. 1986);
Frequent Flyer Depot, Inc. v. Am. Airlines, Inc., 281 S.W.3d 215, 226
(Tex. App.—Fort Worth 2009, pet. denied), cert. denied, 130 S. Ct. 2061 (2010);
see also Moreno v. Silva, 316 S.W.3d 815, 817–18 (Tex. App.—Dallas 2010,
pet. denied) (applying the Villegas presumption to a pro se
litigant).  Mother made an oral motion for continuance just before the
termination trial began in November 2011.  However, the record does not contain
a written motion for continuance, an affidavit, or sworn testimony in support
of the motion.  Because Mother did not comply with rule 251, the trial court
did not abuse its discretion by denying her motion for continuance.  See
Villegas, 711 S.W.2d at 626; see also Z.C., 280 S.W.3d at 478 (“Jeffery’s
motion was unsworn and unsupported by affidavit. Therefore, it did not comply
with rule 251, and under the plain language of the rule, the trial court was
without discretion to grant it.”); In re T.H., No. 02-07-00464-CV, 2008
WL 4831374, at *8 (Tex. App.—Fort Worth Nov. 6, 2008, no pet.) (mem. op.).

          Moreover,
at the beginning of the trial, the trial court learned that Mother had pending
warrants in Oklahoma, that she would therefore be in custody for some period of
time, that in the seven months from the beginning of the case, she had not
progressed on the services that she agreed to complete on the date of the
adversary hearing despite the Department’s attempt to set up those services
where she was residing, that she had exercised minimal visitation with Mary,
and that she had known for two months of the November 2011 trial date but
waited until the day of trial to seek a continuance.  We conclude that these
facts provided the trial court with a reasonable basis for denying Mother’s
motion and that the trial court therefore did not abuse its discretion by
denying the motion.[14]  Z.C., 280 S.W.3d
at 478.  For these reasons, we overrule Mother’s third issue.

Conclusion

          Having
overruled each of Mother’s three issues, we affirm the trial court’s judgment
terminating her parental rights to Mary.

 

 

 

TERRIE LIVINGSTON

CHIEF JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT and GABRIEL, JJ.

 

DELIVERED:  February 14,
2013









[1]See Tex. R. App. P. 47.4.





[2]To protect her anonymity,
we will use “Mary” as an alias to refer to M.A.-O.R. throughout this opinion,
and we will also use an alias to refer to Mary’s brother.  See Tex. R.
App. P. 9.8(b)(2).





[3]Records introduced at
trial show that Mother pled guilty to identity theft in October 2009, to
embezzlement of rented property in May 2011, and to passing bad checks in June
2011.  The identity theft charge stemmed from Mother’s using Mary’s social
security number to get financial assistance.  Mother eventually received
probation for her identity theft charge, but she violated the terms of the
probation, and an Oklahoma court revoked it and sentenced her to a term of
confinement.





[4]Trent testified that
during this argument, Mother hit him in the face and threw a phone at him.  He
stated that arguments between he and Mother occurred frequently and that Mary
cried during the arguments.





[5]Upon the termination of
Mother’s parental rights, CPS planned on allowing Mother’s father and
stepmother to adopt Mary.





[6]See Tex. Fam. Code
Ann. § 262.201(a) (West Supp. 2012).





[7]Before the trial, Mary’s
father voluntarily relinquished his parental rights.





[8]See Tex. Fam. Code
Ann. § 161.001(1)(D), (E), (N), (2) (West Supp. 2012).





[9]Mother also relies on
former section 263.202(c) of the family code, which required trial courts to
advise parties that progress under a service plan would be reviewed at all
hearings.  See Act of May 29, 2005, 79th Leg., R.S., ch. 268, § 1.38(b),
2005 Tex. Gen. Laws 634, 635, repealed by Act of May 27, 2011, 82nd
Leg., R.S., ch. 1071, § 9, 2011 Tex. Sess. Law Serv. 2755, 2759 (West).





[10]Mother did not raise a
due process complaint in the trial court.  The supreme court has held that due
process contentions in termination cases must be preserved in the trial court
to be raised on appeal.  In re L.M.I., 119 S.W.3d 707, 710–11 (Tex.
2003), cert. denied, 541 U.S. 1043 (2004); see In re U.P., 105
S.W.3d 222, 237 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on
reh’g) (concluding that a father in a termination case waived a due process
complaint by not raising it in the trial court); see also In re M.A.P., No.
02-11-00484-CV, 2012 WL 2036457, at *19 (Tex. App.—Fort Worth June 7, 2012, no pet.)
(mem. op.) (“[B]ecause Father did not assert a violation of substantive due
process at trial, he waived that issue for appeal.”).





[11]Mother does not assert
that the trial court violated any section of the family code other than the two
sections described above.





[12]The affidavits that the
Department filed on the day after Mary’s removal explained, among other facts,
that Mother had been confined, that she was possibly going to be extradited to
Oklahoma, that Mary was at school upon Mother’s arrest, that Trent believed
that Mother did not appropriately care for Mary, that Trent could not care for
Mary on a long-term basis while Mother was confined, and that there were no
other appropriate caregivers for Mary.





[13]See Tex. Fam. Code
Ann. § 263.401(a) (West 2008).





[14]In denying the motion for
continuance, the trial court stated,

There’s no sense in continuing the
case to do nothing while [Mother] goes back to Oklahoma and sits in jail for
who knows how long, so I’m going to deny . . . the motion for continuance.  If
we’re going to gain something by doing a continuance, that might be a good
option, but here it doesn’t look like we’re going to gain anything by doing a
continuance.